**Dennis DOMEGAN, Petitioner,**

v.

**Michael V. FAIR, et al., Respondents.**

**Civ. A. No. 84–1097–C.**

United States District Court,
D. Massachusetts.

Feb. 27, 1985.

Dennis Domegan, pro se, and James L. Sultan, Boston, Mass., for petitioner.

Herbert C. Hanson, Sp. Asst. Atty. Gen., Dept. of Correction, William D. Luzier, Asst. Atty. Gen., Boston, Mass., for respondents.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a petition for a writ of habeas corpus brought by Massachusetts state prisoner Dennis J. Domegan. Petitioner contends that he was unconstitutionally deprived of good time credits by the prison disciplinary board at M.C.I., Walpole, where he is incarcerated. The matter is now before the Court on respondents' motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(6).

The petition alleges that at Domegan's hearing before the disciplinary board, the board denied his requests that witnesses be permitted to testify on his behalf, and that he be allowed to examine and present prison records and reports relating to the disciplinary offenses with which he was charged. The board found petitioner guilty as charged on all counts; and Commissioner of Corrections Michael Fair subsequently revoked 150 of petitioner's good time days as punishment for his offenses. Petitioner asserts that the actions of the board at his disciplinary hearing violated his right to due process of law, and he therefore asks this Court to reinstate his lost good time credits.

Respondents, for their part, maintain that petitioner has chosen the wrong legal mechanism by which to bring his claim before this Court. They contend that petitioner is challenging not the validity or duration of his confinement, which are proper subjects for a habeas corpus petition, but rather the conditions of his confinement, which are matters best addressed through a civil rights action under 42 U.S.C. § 1983. Respondents further assert that, even if a petition for a writ of habeas corpus is proper in this case, Domegan's claim should be dismissed because he failed to exhaust his state remedies before bringing his petition before this Court, as required by 28 U.S.C. § 2254.

■ I rule that respondents' contentions with respect to these two issues are meritless. The United States Supreme Court has explicitly held not only that the federal habeas corpus statute provides a remedy for the unconstitutional revocation of a prisoner's good time credits, but also that this statute constitutes an inmate's *exclusive* means of relief from such a deprivation of liberty. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Because the relief which Mr. Domegan seeks is the reinstatement of his good time credits, his petition for a writ of habeas corpus is proper.

■ Furthermore, Domegan's petition cannot be summarily dismissed for failure to exhaust state remedies. The provisions of 28 U.S.C. § 2254(b) and (c),[1] which require a state prisoner to exhaust state remedies before bringing a federal habeas corpus action, are "limited in their application to those state remedies still open to the habeas applicant at the time he filed his application in federal court." *Humphrey v. Cady*, 405 U.S. 504, 516, 92 S.Ct. 1048, 1055, 31 L.Ed.2d 394 (1972).

In this case, petitioner had no further state remedies available to him at the time he made his application to this Court. Although Domegan originally brought a habeas corpus action in Norfolk County Superior Court, that petition was dismissed on November 2, 1982, and he failed to appeal

---

1. 28 U.S.C. § 2254 provides in pertinent part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

that dismissal. By the time Domegan filed his petition with this Court in April of 1984, he had lost not only his right to appeal the decision of the Superior Court, but also the opportunity to seek an extension of time in which to file an appeal. Mass.R.App.P. 4, 14(b); *Giacobbe v. First Coolidge Corp.*, 367 Mass. 309, 317, 325 N.E.2d 922 (1975).

In the situation presented here, where a prisoner's state remedies were no longer available at the time he filed his federal habeas petition, a federal district court may dismiss the petition without regard for its merits only if the Court first determines that the "habeas applicant, after consultation with competent counsel or otherwise, *understandingly* and *knowingly* forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the *deliberate by-passing* of state procedures ..." *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963) (emphasis added).

I rule that petitioner's failure to pursue his state habeas appeal was not the result of a decision involving the kind of understanding and knowledge contemplated by *Fay v. Noia*. Apparently, Domegan was not represented by counsel at any time during the state court proceedings, although the Superior Court docket reveals that he did file a motion requesting that counsel be appointed for him. Furthermore, petitioner asserts that he was unaware of his right of appeal because he had never before filed an action in state court. These factors tend to show that petitioner's failure to prosecute an appeal was not intended to be a mere tactical shortcut to federal court. *See Montgomery v. Hopper*, 488 F.2d 877 (5th Cir.1973). I therefore rule that petitioner's claims should not be dismissed for failure to exhaust state remedies.

The final issue which this Court must consider is whether the petition, on its face, sets forth a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Respondents cannot, and do not, contend that petitioner was entitled to no due process whatsoever prior to the revocation of his good time credits. Instead, respondents maintain that petitioner's allegations, taken as true, simply do not make out a denial of the elements of due process to which petitioner was entitled.

The United States Supreme Court has recognized that a state prisoner possesses a constitutionally protected liberty interest in the good time credits which he has earned, if such credits accrue pursuant to a statutory scheme and cannot be revoked except as punishment for misconduct. *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Because Massachusetts state prisoners are awarded good time credits in accordance with such a statutory plan, M.G.L. c. 127 § 129, an inmate cannot be deprived of earned credits without first being given a hearing at which certain procedures, guaranteeing minimal due process, are observed. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935.

Among the limited constitutional safeguards to which a prisoner facing deprivation of good time credits is entitled is the right to be heard by an impartial tribunal. *Id.* at 571, 94 S.Ct. at 2982. An inmate also has the right to call witnesses and present documentary evidence, when allowing him to do so would "not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. Because of the extraordinary difficulties inherent in prison management, however, prison officials must be accorded considerable discretion in determining whether the presentation of certain testimony or documents may jeopardize the orderly administration of the institution. *Id.* Furthermore, a disciplinary committee is not required to state its reasons for refusing to permit the submission of particular evidence. *Id.; Baxter v. Palmigiano*, 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976).

In view of the restricted nature of due process in a prison setting, the Court of Appeals for the First Circuit has held that,

to state a claim which will survive a 12(b)(6) motion:

> it is not sufficient merely to allege that complainant's requests to call witnesses or submit written statements at a prison disciplinary hearing were denied, even if it is additionally alleged that the disciplinary board did not express its reasons for the denial. To state a valid claim, it must be alleged that the inmate's requests were denied for reasons not having to do with institutional security or correctional goals, and that the prison officials, in ruling as they did, clearly abused their considerable discretion in such matters. (Citations omitted.) Moreover, these allegations must be backed up with enough supportive facts to outline the elements of the pleader's claim.

*Hurney v. Carver,* 602 F.2d 993, 995 (1st Cir.1979).

■ An inmate is therefore under a heavy burden to show that a disciplinary board's refusal to accede to his evidentiary requests resulted from improper motives. *Devaney v. Hall,* 509 F.Supp. 497, 500 (D.Mass.1981). I rule that Domegan has failed to sustain this burden. According to the allegations of the petition, the chairman of the disciplinary board informed Domegan that inmate Michael Parenti would not be permitted to testify on Domegan's behalf because, the chairman stated, the "[s]ecurity of the I.D.U. Unit superceeds the request for ... [Parenti's] physical presence." Although he asserts that this denial of his request to call a witness was arbitrary, capricious, and indicative of the chairman's lack of impartiality, petitioner alleges no facts which support these conclusory allegations.

■ Domegan further contends that the board violated his right to due process by refusing to allow him to examine and present certain use of force reports, incident reports, and the log book from the I.D.U. Unit. Petitioner's claim is untenable. This Court has found no legal precedent for the proposition that an inmate subject to disciplinary proceedings has any right to discovery.

■ The petitioner also alleges, however, that the chairman reviewed relevant entries in the I.D.U. log book prior to the hearing thereby violating a Department of Correction regulation which states, in part: "[a]ll evidence considered by the disciplinary board shall be presented in the presence of the inmate...." 103 C.M.R. 430.-14(3). Domegan contends that the chairman's disregard for this prison rule is, in itself, a denial of due process. The failure of the board to comply with its own regulation would constitute a denial of due process if the regulation were mandated by the Constitution or federal law. *See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Under *Wolff,* however, an inmate's right "to have full access to all evidence ... [is] left to the discretion of state prison officials." *Langton v. Berman,* 667 F.2d 231, 235 (1st Cir.1981) (citing *Wolff v. McDonnell,* 418 U.S. at 567–69, 94 S.Ct. at 2980–81). Although petitioner asserts that the board's refusal to produce prison records amounted to an abuse of its discretion, he alleges no facts which sustain his contention.

For the reasons set forth above, I rule that respondent's motion to dismiss the petition for a writ of habeas corpus should be allowed.

Order accordingly.