NICHOLAS R. MAINIERO, JR. *v.*
VICTOR LIBURDI, WARDEN
(13850)

SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 31—decision released May 1, 1990

*John J. Buckley,* special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard F. Jacobson,* assistant state's attorney, for the appellee (state).

GLASS, J. This is an appeal by the petitioner, Nicholas R. Mainiero, Jr., from the court's denial of his petition for a writ of habeas corpus. The writ was denied because of the habeas court's finding that the petitioner had failed to sustain the burden of proof on his claim that General Statutes § 53a-39[1] was unconstitutional,

---

[1] "[General Statutes] Sec. 53a-39. REDUCTION OF DEFINITE SENTENCE OF THREE YEARS OR LESS. DISCHARGE OF DEFENDANT. INTENSIVE PROBATION. At any time during the period of a definite sentence of three years

and on his claim of ineffective assistance of counsel at the time that he pleaded guilty to the charges resulting in his confinement. We find no error.

The petition for a writ of habeas corpus was heard on January 6, 1989, at the Superior Court in New Haven, and the following facts were developed at the hearing and found by the habeas court as reflected in its memorandum of decision and the record. The petitioner was arrested in March, 1984, and charged with sexual assault in the first degree, in violation of General Statutes § 53a-70 (a) (2), and risk of injury to a child, in violation of General Statutes § 53-21. Attorney Raymond Kelly, then a public defender, was ap-

or less, the sentencing court or judge may, after hearing and for good cause shown, reduce the sentence, order the defendant discharged, or order the defendant discharged on probation or conditional discharge for a period not to exceed that to which he could have been originally sentenced. At any time during the period of a definite sentence of at least two years but not more than five years, the sentencing court or judge shall refer any application of a defendant seeking placement in the intensive probation program to the office of adult probation for assessment and recommendations and may, after hearing and for good cause shown, order the defendant discharged on intensive probation in accordance with subsection (b) of section 54-105 for a period of at least one year but not more than the unexpired portion of the sentence. A defendant sentenced for the commission of a class A felony shall not be eligible to be discharged on intensive probation. If a definite sentence includes suspension of incarceration after a period of at least two years but not more than five years, followed by a period of probation, the defendant may be placed in the intensive probation program in accordance with the provisions of this section, provided he shall have served at least one-half of the unsuspended portion of his sentence prior to release from incarceration. At the time the sentencing court or judge orders the defendant discharged on intensive probation, the court or judge may order that if the defendant successfully completes his intensive probation he shall be placed on regular probation for a period of time which is not more than the difference between (1) the time served plus the time which will be spent on intensive probation and (2) the terms of the initial sentence. Any defendant discharged on intensive probation shall comply with the conditions of probation ordered by the court or required by the office of adult probation, as provided in subsections (a) and (b) of section 53a-30."

pointed to represent the petitioner. Kelly had been a public defender for three years and had handled serious felony matters. Because the petitioner was at least sixteen years of age but had not reached his eighteenth birthday at the time that the charged offenses were allegedly committed, Kelly moved to have the petitioner treated as a youthful offender rather than proceed on the regular criminal docket. This motion was denied. Another motion by Kelly for a reduction of the petitioner's bond was granted, however, and he was thereafter released. While the petitioner was out on bond, he was charged with two other offenses allegedly committed in February, 1985. These additional charges were assault in the first degree, in violation of General Statutes § 53a-59 (a), and larceny in the first degree, in violation of General Statutes §§ 53a-119 and 53a-122 (a) (3).

On March 26, 1985, the petitioner's trial commenced on the charges arising out of the March, 1984 incident—sexual assault and risk of injury. After jury selection, the petitioner, on March 27, 1985, "after being completely advised by Attorney Kelly, accepted a plea bargain to the charges on that file and entered an *Alford* Plea. . . . " See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The court found that at the time the plea was entered, the petitioner's uncle, Lawrence Mainiero, was his guardian ad litem. While he was handling the sexual assault and risk of injury charges, Kelly was aware of the additional February, 1985 charges pending against the petitioner. Although the petitioner had been arraigned on the additional charges, the file had not yet been transferred from Part B to Part A of the Superior Court. Nonetheless, after extensive discussions with the trial court and the state's attorney, Kelly was able to effectuate an agreement that included the disposition of the February, 1985 charges with the dispo-

sition of the March, 1984 charges. The petitioner's Part B file containing the February, 1985 charges was then transferred to Part A of the Superior Court for consolidation and disposition with the March, 1984 charges.

The trial court found that the plea bargain disposition of the charges arising out of the March, 1984 incident provided for the petitioner to receive a sentence of five years confinement for the risk of injury and sexual assault charges. The agreement further provided that the sentences for these charges were to run concurrently with the sentences received from the February, 1985 charges of larceny and assault, with an agreed maximum of ten years imprisonment. While the court informed Kelly that he could argue for a lesser sentence, the court stated that it felt that the sentence was fair and that the petitioner would need a favorable presentence investigation report in order to receive a lesser sentence. Nonetheless, Kelly continued to negotiate for a lesser period of actual incarceration. Finally, he was successful in obtaining an agreement encompassing both files for a total effective sentence of twelve years, execution suspended after eight years of imprisonment, and five years probation. The court found that Kelly discussed with the petitioner and his uncle, the guardian ad litem, the meaning of the agreed sentence. The court also found that Kelly informed the petitioner that he would be required actually to serve five and one-half years of imprisonment and that he could serve a lesser period of imprisonment only through programs that might be provided at the correctional institution.

On June 28, 1985, the petitioner was sentenced as agreed. The petitioner was then seventeen years old. He was confined at the Manson Youth Center until May, 1988, at which time he was transferred to the Cheshire Correctional Center. Prior to commencing this

action, the petitioner applied for a community release program but was found ineligible because of the length of time remaining on his sentence. The petitioner will become eligible for community release, however, in December, 1990, when only thirty months of his sentence remain. The petitioner was also advised that a modification of his sentence, under § 53a-39, was unavailable to him because § 53a-39 precludes modification when a sentence, such as his, exceeds five years.

On appeal the petitioner now claims the following: (1) that General Statutes § 53a-39 is unconstitutional as interpreted and applied by the habeas court; (2) that the habeas court incorrectly applied the law, particularly § 53a-39, in accordance with the clear intent of the law; (3) that the trial court improperly canvassed the petitioner at the time that he pleaded guilty; and (4) that there was ineffective assistance of counsel when he pleaded guilty.

I

The central issue in this appeal is the petitioner's claim that the habeas court's interpretation and application of § 53a-39 was unconstitutional and not in accordance with its clear intent. We are unpersuaded. Specifically, the petitioner notes that under § 53a-39 a prisoner is eligible to apply for intensive probation only if his sentence is for a period of not less than two years nor more than five years. Furthermore, a prisoner is eligible to apply to the trial court for sentence modification pursuant to § 53a-39 only if his sentence is not in excess of three years. If a prisoner's sentence is in excess of three years, then he must petition the sentence review division of the Superior Court pursuant to General Statutes § 51-195[2] in order to have his sentence modified.

---

[2] "[General Statutes] Sec. 51-195. APPLICATION FOR REVIEW OF SENTENCE. Any person sentenced on one or more counts of an information

The petitioner notes that, because his sentence is for twelve years, he is unable to apply for intensive probation or for sentence modification under § 53a-39. In addition, the petitioner is not eligible to have his sentence reviewed by the sentence review division because he entered a plea agreement and § 51-195 excludes from review "any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement." The petitioner asserts that the habeas court erred in finding this statutory scheme constitutional. In particular, the petitioner contends that this statutory scheme is unconstitutional because it deprives him of the right to apply for intensive probation, and because it deprives him of a forum in which to argue that his sentence should be modified.

The eligibility restrictions on sentence review, sentence modification and intensive probation are statu-

to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed or if the offender received a suspended sentence with a maximum confinement of three years or more, within thirty days of revocation of such suspended sentence, except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement, file with the clerk of the court for the judicial district in which the judgment was rendered an application for review of the sentence by the review division. Upon imposition of sentence or at the time of revocation of such suspended sentence, the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include a statement that review of the sentence may result in decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany the notice. The clerk shall forthwith transmit such application to the review division and shall notify the judge who imposed the sentence. Such judge may transmit to the review division a statement of his reasons for imposing the sentence, and shall transmit such a statement within seven days if requested to do so by the review division. The filing of an application for review shall not stay the execution of the sentence."

tory prescriptions established by the legislature. " 'A party contesting a statute's constitutionality has a heavy burden to prove unconstitutionality beyond a reasonable doubt.' *State* v. *Dupree,* 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985); see *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972). . . . 'In examining the rationality of a legislative classification, we are bound to defer to the judgment of the legislature unless the classification is clearly irrational and unreasonable.' *State* v. *Dupree,* supra; *State* v. *Simmat,* 184 Conn. 222, 224–25, 439 A.2d 915 (1981)." *State* v. *Wright,* 198 Conn. 273, 282, 502 A.2d 911 (1986).

The petitioner has failed to cite any authority that supports his assertion that the eligibility restrictions that the legislature has imposed upon intensive probation, sentence modification and sentence review are unconstitutional. We conclude that the legislature's establishment of such eligibility restrictions was both rational and reasonable. As the habeas court correctly stated: "The legislature has a rational basis to impose whatever guidelines and procedures it deemed appropriate. Section 53a-39 used the severity of the crime and length of incarceration as guidelines for rehabilitation and public safety. . . . Accordingly, the distinctions drawn between sentences of different lengths and corresponding available alternatives or reduced punishments are rationally related. Section 53a-39 (rev'd 1989) is neither irrational nor arbitrary." In sum, the legislature has prescribed a statutorily harmonious and constitutional scheme for sentence modification, sentence review and intensive probation.

## II

The petitioner also argues that the trial court did not properly canvass him when he pleaded guilty. Specifi-

cally, he contends that the trial court had a constitutional duty to inform him, at the time that he entered his pleas, of the consequences of those pleas in relation to § 53a-39. We disagree.

"Under *Boykin* [v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)], in order for a plea to be knowingly, voluntarily and intelligently made, a trial court is required to advise a defendant that his plea operates as a waiver of three fundamental constitutional rights—jury trial, confrontation and self-incrimination." *State* v. *Badgett,* 200 Conn. 412, 418, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). "There is no requirement, however, that the defendant be advised of every possible consequence of such a plea." *State* v. *Gilnite,* 202 Conn. 369, 383, 521 A.2d 547 (1987).

In sum, we hold that the trial court had no duty to inform the petitioner that, because of his sentence, he would not be eligible for sentence modification or intensive probation pursuant to § 53a-39. Such consequences of the petitioner's plea are simply beyond the scope of the constitutional mandates required to effectuate a valid plea of guilty under *Boykin* v. *Alabama,* supra.[3]

There is no error.

In this opinion the other justices concurred.

---

[3] At oral argument, the petitioner abandoned his claim of ineffective assistance of counsel.