[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
I
Introduction and Factual Background
On February 2, 1995, the plaintiff, State of Connecticut, acting at the request of Gloria Schaffer, Commissioner of Consumer Protection, brought a two count complaint against the defendant Hertz Corporation, pursuant to the Connecticut Unfair Trade Practices Act, General Statutes § 42-110m, alleging that the defendant has violated General Statutes § 14-153b
which prohibits businesses renting passenger motor vehicles for 30 days or less from requiring a customer to show proof that he or she holds a credit card as a condition to the rental of the vehicle.
On March 3, 1995, the defendant filed a motion to strike both counts of the plaintiff's complaint maintaining that there is no violation of § 14-153b and thus no violation of CUTPA and further, that to interpret the defendant's conduct as violative of General Statutes § 14-153b would be unconstitutional under the United States and Connecticut Constitutions. CT Page 4885
 II DISCUSSION
 a.
"A motion to strike challenges the legal sufficiency of a pleading." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). A motion to strike shall be granted if "the plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. AetnaLife Casualty Ins. Co., 13 Conn. App. 208, 211, 535 A.2d 390
(1988).
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) Mora v. Aetna Life Casualty Ins. Co., supra, 13 Conn. App. 211. "A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts." Id.
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport HousingAuthority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) Alarm Applications Co. v. Simsbury VolunteerFire Co., 179 Conn. 541, 549-50, 427 A.2d 822 (1980).
 b.
1.
General Statutes § 14-153b provides:
 Proof of Credit. No person, firm or corporation engaged in the business of renting or leasing passenger motor vehicles without drivers, for periods of thirty days or less, shall require any customer to show proof that he holds a card provided by a credit card issuer as a condition to the rental of CT Page 4886 a passenger motor vehicle; provided this section shall not prohibit such person, firm or corporation from requiring from a customer both suitable identification and a reasonable deposit.
The plaintiff alleges that Hertz violates this statute by "requiring a customer who desires to rent a passenger motor vehicle to either: (a) show proof that he or she holds a card provided by a credit card issuer as a condition to the rental of a passenger motor vehicle or (b) pay an additional $15.00 processing fee, wait up to thirty days for approval of a cash rental application and post a cash deposit." The defendant argues that the legislation proscribes only the credit card requirement — and nothing else. Hence it maintains that its processing requirements are proper.
2.
"Statutes are to be applied as their words direct." RiverDock Pile, Inc. v. O G Industries, Inc., 219 Conn. 787, 805,595 A.2d 839 (1991). "When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction. . . ." (Citations omitted; internal quotation marks omitted.) Packtor v. Seppala and AHO Construction Co.,33 Conn. App. 422, 428, 636 A.2d 383 (1994). "Courts may not read into clearly expressed legislation provisions which do not find expression in its words." (Internal quotation marks omitted.)Struckman v. Burns, 205 Conn. 542, 546 (1987). "The objective of statutory construction is to give effect to the intended purpose of the legislature. . . . It is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary."Rose v. Freedom of Information Commission, 221 Conn. 217, 225,602 A.2d 1019 (1992). To the extent there is some ambiguity about the phrase "reasonable deposit", the court will examine the legislative history.
Unfortunately, the phrase "reasonable deposit" is not defined. The legislative history reveals only that the legislature did not intend to allow rental car companies to require anything more from cash renters than suitable identification and a cash deposit. It indicates that if a CT Page 4887 customer does not have a credit card, a credit line can alternatively be established by a cash deposit. During the debate on the passage of the bill, Representative Mosley stated:
 [O]ne can call the bank to get your credit records from the bank and additionally, the bill does not prohibit the dealer requiring a substantial deposit to make sure that you return the car.
 I think appropriate safeguards are still available for the person that leases the car.
26 H.R. Proc., Pt. 6, 1983 Sess., p. 2391. Representative Goodwin explained that he had a brother who lived in Korea who didn't have any credit cards and stated:
 The last time he came he was told [by the car rental company that] he must have a credit card or put down $600. . . . [I] think there must be many people who come from foreign countries for whom the use of cash is much more nearly feasible than the use of a credit card and it seems to me that this is a reasonable way around the problem.
26 H.R. Proc., Pt. 6, 1983 Sess., p. 2394-395.
Additionally, the following exchange took place between Representative Parker and Representative Mosley:
 Representative Parker: If they do not have a credit card, how is the customer's credit line established?
 Representative Mosley: Through cash, Mr. Speaker. The bill does not prohibit the dealer from requiring a deposit, so the person who's leasing the car could put down a deposit or they could establish their credit through cash. CT Page 4888
26 H.R. Proc., Pt. 6, 1983 Sess., p. 2387-2388. Finally, Representative Onorato remarked:
 A lot of people now are in the frame of mind that the only way they can rent these cars is with a credit card. Once this bill is passed and people know that they can be required to put a deposit down with proper identification, that problem won't exist. . . .
 Also, the industry . . . if for example it's during a nine to five kind of a thing can call the local bank up and confirm the credit in any event and if the customer is willing they can put X number of dollars aside for that account.
26 H.R. Proc., Pt. 6, 1983 Sess., p. 2390.
It is clear that the legislature intended that rental customers may not be denied the opportunity to rent a car because they do not have a credit card. It is also clear that there is no support in the language of § 14-153b or in its legislative history that would allow rental companies to subject cash renters to extra processing fees and waiting periods. Nothing in the legislative history or the final bill indicates that the legislature intended to allow rental car companies to require anything more from renters than suitable identification and a reasonable deposit.
In the present case, instead of requiring a cash deposit, the defendant is apparently requiring the customer to wait up to thirty days for the vehicle and to pay an additional processing fee. Hence, that person arriving at the airport, seeking to use cash, cannot rent a car — at least not for thirty days. The plaintiff has thus properly alleged a violation of General Statutes § 14-153b.
 c.
General Statutes § 42-110b(a), states, "[n]o person shall CT Page 4889 engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In determining whether a practice violates CUTPA, our courts have adopted the criteria set out in the "cigarette rule" by the Federal Trade Commission for determining when a practice is unfair: "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [or competitors or other businessmen]. . . ." (Internal quotation marks and citations omitted.) Associated Investment Co.v. Williams Assoc., 230 Conn. 148, 155, A.2d (1994). The court also stated:
 We have also noted that all three criteria need not be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA.
Id., 156.
General Statutes § 14-153b is clearly a public policy statute seeking to protect the public's ability to rent passenger motor vehicles. As the complaint contains sufficient allegations that the defendant has violated General Statutes § 14-153b, a public policy statute, the defendant has also alleged a violation of CUTPA.
 d.
The defendant also maintains that interpreting General Statutes § 14-153b as proscribing the alleged conduct would CT Page 4890 be unconstitutional under the federal and state constitutions. The defendant argues that "[i]f Connecticut General Statutes Section 14-153b were applied to preclude the Hertz Cash Rental Policy, such an application would be unconstitutional based upon the void for vagueness doctrine." The plaintiff argues to the contrary.
"[A] party challenging the constitutionality of a statute bears the burden of proving that the statute is unconstitutional beyond a reasonable doubt." Johnson v. Meehan, 225 Conn. 528,543-544, 626 A.2d 244 (1993); Connecticut Building Wrecking Co.v. Carothers, 218 Conn. 580, 590, 590 A.2d 447 (1991); Mainierov. Liburdi, 214 Conn. 717, 724, 573 A.2d 1207 (1990). "In construing a statute . . . [a court] will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." Bartholomew v. Schweizer,217 Conn. 671, 675-76, 587 A.2d 1014 (1991). "Due process requires that laws `give the person of ordinary intelligence a reasonable opportunity to know what is being prohibited' and `provide explicit standards for those who apply them' in order to prevent the risk of arbitrary and discriminatory enforcement." (Citations omitted.) Connecticut Building Wrecking Co. v. Carothers, supra,218 Conn. 591.
"To demonstrate that a statute is unconstitutionally vague as applied to him, a litigant must therefore demonstrate beyond reasonable doubt that he had inadequate notice or that he was the victim of arbitrary and discriminatory enforcement." Id. The plaintiff in the present case has demonstrated neither. "The fact that the meaning of the language is fairly debatable is not enough to satisfy the burden of proof." Bottone v. Westport,209 Conn. 652, 658, 553 A.2d 576 (1989). "Lack of precision . . . is not, in or of itself, offensive to the requirement of due process." Seals v. Hickey, 186 Conn. 337, 344, 441 A.2d 604
(1982).
The defendant's contentions are not sufficient to meet its heavy burden of proving that General Statutes § 14-153b is unconstitutional. The statute prohibits rental companies from making a credit card the key to the rental of a passenger motor vehicle. It requires that the companies look at other security; namely, suitable identification and cash. The defendant's policy of requiring cash customers to endure a thirty day waiting period clearly denies cash customers the ability to rent motor vehicles. General Statutes § 14-153 sufficiently notifies a person of CT Page 4891 ordinary intelligence of the prohibition and the alternative means of security. It is not unconstitutionally vague and, accordingly, the defendant's motion to strike is denied.
Berger, J.